UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>v.<br><br>FRANCISCO MUNGUIA-LOPEZ;<br>JESUS MANUEL MEDINA-VALDEZ;<br>and JOSE ABELARDO ASTORGA-<br>QUIROA,<br><br>     Defendants. | Case No. 4:21-cr-00284-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Jesus Manuel Medina-Valdez's Motion to Suppress (Dkt. 39), which was joined by Defendant Francisco Gabriel Munguia-Lopez (Dkt. 42)[1] and by Defendant Jose Abelardo Astorga-Quiroa (Dkt. 43). On May 3, 2022, the Court held oral argument and took the Motion under advisement. Upon review, and for the reasons set forth below, the Court DENIES the Motion to Suppress.

---

[1] Munguia-Lopez's filing was labeled a "Motion to Suppress Evidence Seized As Result of Traffic Stop" but the six-line filing stated that Munguia-Lopez "hereby joins" the motion. Dkt. 42. To the extent that Munguia-Lopez intended the filing to be a Motion to Join instead of a Notice of Joinder, the Court GRANTS the Motion to Join.

## II. BACKGROUND[2]

Munguia-Lopez is an alleged drug dealer who sold approximately 239 grams of methamphetamine, as well as samples of cocaine and marijuana, to an undercover officer ("UC") on August 12, 2021, for $2,000. Dkt. 46, at 5; Dkt. 46-1; Dkt. 46-2. The UC and Munguia-Lopez later negotiated a second purchase,[3] in which Munguia-Lopez agreed to sell the UC ten pounds of methamphetamine and a quarter pound of cocaine for $37,800. Dkt. 46, at 16. It was agreed that the second sale would take place at the Conoco Valley Store in Swan Valley, Idaho,[4] at 12:00 p.m. on September 13, 2021. Dkt. 46, at 16.

On the day of the proposed purchase, law enforcement began observing Munguia-Lopez at 6:49 a.m., at his house in Driggs, Idaho. Dkt. 46, at 16. Between 7:01 a.m. and 8:06 a.m., Munguia-Lopez drove his 2010 black Audi A4 to a jobsite he worked at in Alpine, Wyoming, just across the Idaho border. *Id.* Munguia-Lopez called the UC at approximately 9:41 a.m., informing him that the drugs had arrived but that someone else had them in their car and he needed to get them before the purchase. *Id.* At 10:00 a.m., Idaho State Police ("ISP") Detective Josh Tuttle[5] had a pre-buy briefing with other law enforcement officers. Dkt. 46, at 16. At the briefing, roles were assigned, and it was

---

[2] Obviously, the facts may evolve as the adjudicative process continues and should not be considered final.
[3] The UC communicated with Munguia-Lopez via cell phone, including text messages and phone calls. Dkt. 46-1, 46-4. Law enforcement obtained a search warrant on August 26, 2021, for real time location information for Munguia-Lopez's cell phone in Bonneville County, Search Warrant No. 2021-159. The search warrant return stated that location information was gathered from August 26, 2021, to September 13, 2021.
[4] This was the same location where the initial drug transaction occurred.
[5] At the hearing, Detective Tuttle testified that he had been a detective for thirteen years and had taken several narcotics training courses, including drug interdiction courses. Without recounting all his courses, the Court concludes that Detective Tuttle has had enough experience and training (including courses discussing follow cars) to lend substantial credibility to his observations and in-field decisions.

determined that ISP troopers would perform a traffic stop on Munguia-Lopez's vehicle. *Id.* The officers continued to watch Munguia-Lopez from the time initial surveillance started until the traffic stop. However, based on Detective Tuttle's testimony at the hearing, Munguia-Lopez was unobserved for approximately 65–85 minutes at various points in the morning after he made the phone call to the UC.

At some point in the morning, Munguia-Lopez drove back to his home, where surveillance located the black Audi at 11:25 a.m. *Id*. At 11:37 a.m., Munguia-Lopez texted the UC that he would be at the purchase location in 25 minutes. Dkt. 46-4, at 10. At that same time, Detective Brandon Storer saw the black Audi pull out of Munguia-Lopez's house. Dkt. 46, at 17. Detective Storer testified at the hearing that he reached down to grab a radio to notify his fellow officers, diverting his focus for a brief moment, and when he looked up, he saw a 2016 silver[6] Toyota Corolla with a California license plate and heavily tinted windows following the black Audi within a car length or less. *Id.* The silver Corolla closely followed the black Audi when they both turned left onto State Highway 33 going southbound. The same Corolla continued to follow the black Audi through the town of Driggs, through the town of Victor, past various turnoffs (including the main intersection in Driggs by Broulim's Grocery Store, prominent intersections in the town of Victor, and various turnoffs for stores, recreational facilities, and private properties), and onto State Highway 31. Notably, State Highways 31 and 33 are state *highways*, not limited access freeways like I-15 that have limited on- and off-ramps. Although the highways between

---

[6] Although the Corolla was referred to as white in the Motion to Suppress, Medina-Valdez's counsel clarified that he was not attempting to create a factual dispute and agreed that the car was silver.

Driggs and Swan Valley are in a rural location, there are significantly more driveways and cross-roads that access the highways than access a freeway.[7] By the time they were outside Swan Valley, there was a civilian car in between the black Audi and the silver Corolla.

People engaged in drug trafficking often use follow cars. Dkt. *Id.* A follow car is a vehicle that transports all or some of the controlled substances to a delivery location to evade law enforcement detection. *Id.* Detective Tuttle testified that he has seen four instances in which a follow car was used, although he knows that the use of follow cars is much more common in other states. However, although it is not as common in Idaho, he still is on the lookout for follow cars in every drug investigation he does.

Based upon Munguia-Lopez's conversations with the UC that the drugs were in a different car, the observations of law enforcement that the silver Corolla was closely tailing the black Audi, the fact that the Corolla was maintaining the same speed as the Audi and never attempted to pass it, the tint on the windows, the silver Corolla's California license plates,[8] and Detective Tuttle's training and experience regarding follow cars, Detective Tuttle concluded that the silver Corolla was likely a follow car and decided ISP troopers would stop the silver Corolla in addition to the black Audi. *Id.*

At the hearing, Corporal Jared Shively explained that he was the officer who stopped the silver Corolla. Corporal Shively testified that he saw a likely Idaho Code window tint violation on the Corolla. Corporal Shively also testified that it was easy to spot

---

[7] In other words, a car is not reliant on distantly spaced off-ramps to exit the highway in the way that a car is reliant on off-ramps on a limited access freeway. A car has a much easier time exiting a highway than a freeway.

[8] Detective Tuttle found this significant because California is a source state for methamphetamine.

the silver Corolla because it had California plates and, due to the residential and rural nature of the area, he had observed mostly Idaho license plates as he watched the cars on Highway 31.[9] The traffic stops occurred on State Highway 31 at mileposts three and four at approximately 12:09 p.m. *Id.* The silver Corolla had been following the black Audi for about thirty minutes over twenty-five miles when the traffic stops occurred. *See id.*

Following the stop, Munguia-Lopez was searched. *Id.* Law enforcement recovered four plastic bags of suspected cocaine and a plastic sandwich bag with $10,000 from Munguia-Lopez, as well as $28 from his pockets and $1,044 from his wallet. *Id.* The four plastic bags of suspected cocaine weighed a total of 129.6 grams. *Id.* The suspected cocaine NIK tested positive. *Id.*

Medina-Valdez was the driver of the silver Corolla, and Astorga-Quiroa was a passenger. *Id.* Among other items, law enforcement recovered two grocery bags from the silver Corolla containing a total of ten packages of methamphetamine, later determined to contain 4,430.6 grams of methamphetamine. *Id.*; Dkt. 46–2. Law enforcement also recovered a small bag of suspected cocaine from Astorga-Quiroa. Dkt. 46, at 22.

Medina-Valdez, Munguia-Lopez, and Astorga-Quiroa were charged and booked into the Bonneville County Jail. Dkt. 46, at 22, 25. The three Defendants were charged via indictment on October 26, 2021, with conspiracy to distribute and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 21 U.S.C. § 846. Dkt. 1. Munguia-Lopez was also individually charged with possession with

---

[9] Corporal Shively had been stationed alongside Highway 31 most of that day and had been watching cars pass.

intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2. *Id.*

Medina-Valdez, the driver of the silver Corolla, brought the instant Motion to Suppress on January 8, 2022. Dkt. 39. This motion was later joined by both Munguia-Lopez (Dkt. 42) and Astorga-Quiroa (Dkt. 43). The Government opposes the Motion to Suppress. Dkts. 45, 46.

### III. LEGAL STANDARD

The Fourth Amendment protects citizens from unreasonable searches and seizures by the government. U.S. Const. amend. IV. The stop of a vehicle is a seizure of its occupants and is therefore subject to the Fourth Amendment standards. *E.g.*, *Arizona v. Johnson*, 555 U.S. 323, 333 (2009); *Brendlin v. California*, 551 U.S. 249, 255 (2007); *Whren v. United* States, 517 U.S. 806, 809–10 (1996); *Berkemer v. McCarty,* 468 U.S. 420, 436–37 (1984) ("We have long acknowledged that stopping an automobile and detaining its occupants constitute a seizure." (cleaned up)). Indeed, "[a]n individual operating or traveling in an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use are subject to government regulation." *Delaware v. Prouse*, 440 U.S. 648, 662 (1979).

Under the Fourth Amendment, government officials may conduct an investigatory stop of a vehicle only if they possess "reasonable suspicion: a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Thomas*, 211 F.3d 1186, 1189 (9th Cir. 2000) (quotations omitted); *see United States v. Lopez–Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000) (Fourth Amendment requires reasonable

suspicion, not probable cause, for traffic stop); *see also United States v. Wallace*, 213 F.3d 1216, 1219 n.3 (9th Cir. 2000) (as amended) (probable cause will also support traffic stop). Such reasonable suspicion "requires specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that a particular person is engaged in criminal conduct." *Thomas*, 211 F.3d at 1189 (quotations omitted).

In other words, whether such a stop is reasonable under the Fourth Amendment, depends on the totality of the circumstances. *Navarette v. California*, 572 U.S. 393, 397 (2014). Reasonable suspicion is more than "a mere hunch" but "considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Id.* (cleaned up). Law enforcement officers have reasonable suspicion when they have "a particularized and objective basis for suspecting the particular person" is breaking the law. *Id.* at 396 (cleaned up).

Conduct that, when viewed individually, might be innocent behavior, when taken together, can form the basis of reasonable suspicion. *United States v. Arvizu*, 534 U.S. 266, 274–75 (2002); *United States v. Valdes-Vega*, 738 F.3d 1074, 1080 (9th Cir. 2013) (en banc) ("A series of innocent acts may be enough for reasonable suspicion justifying an investigative stop.").

While "[t]he Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands," *United States v. Leon*, 468 U.S. 897, 906 (1984), the exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect," *United States v. Calandra*, 414 U.S. 338, 348 (1974). Under the exclusionary rule, "illegally seized

evidence" cannot be used "against the search victim in a criminal trial." *Id.* at 350.

When a defendant challenges a warrantless search or seizure, the government bears the burden of establishing by a preponderance of evidence that the search or seizure did not violate the Fourth Amendment. *See United States v. Carbajal*, 956 F.2d 924, 930 (9th Cir. 1992); *United States v. Johnson*, 936 F.2d 1082, 1084 (9th Cir. 1991); *see also United States v. Jeffers*, 342 U.S. 48, 51 (1951).

## IV. ANALYSIS

### A. Munguia-Lopez

As an initial matter, Munguia-Lopez has no standing to challenge the stop of the silver Corolla. In order to succeed on a Fourth Amendment violation claim, a party must show that they "had a legitimate expectation of privacy in the premises" searched. *Byrd v. United States*, 138 S. Ct. 1518, 1526 (2018) (cleaned up). An individual has a "legitimate expectation of privacy" if (1) the individual demonstrates a subjective expectation of privacy in the place being searched, and (2) this subjective expectation is one "that society accepts as objectively reasonable." *United States v. Schram*, 901 F.3d 1042, 1044 (9th Cir. 2018) (cleaned up). Here, Munguia-Lopez has no expectation of privacy in the silver Corolla sufficient to challenge the traffic stop. He was not a passenger. He has no ownership interest in the car. Indeed, Munguia-Lopez's joinder makes no attempt to establish an expectation of privacy to establish his standing. Accordingly, the Motion to Suppress is DENIED in regard to Munguia-Lopez.

During the hearing, Munguia-Lopez also argued that his vague, barebones joinder included a challenge to the traffic stop of the black Audi that he was driving. As the Court

explained during the hearing, Munguia-Lopez's joinder made no mention of the black Audi whatsoever. Below is the joinder in its entirety:

> COMES NOW the Defendant, Francisco Gabriel Munguia Lopez, by and through his attorney, Allen H. Browning, BROWNING LAW, and hereby joins Defendant Jesus Manuel Medina Valdez, in his Motion to Suppress Evidence filed on January 8, 2022 for the reasons articulated in his Motion and the Accompanying Briefing.
> Defendant moves to Exclude evidence of any drugs illegally seized as part of an unwarranted or unconstitutional stop.

Dkt. 42. The Government and the Court had no warning that Munguia-Lopez was going to challenge his own stop at the hearing. This Court does not look favorably on counsel filing motions with the broadest possible conclusory language that counsel later seeks to flesh out in court. Accordingly, the Court denied Munguia-Lopez's request to challenge his own stop during the hearing but will allow Munguia-Lopez a grace period to file a Motion to Suppress. If Munguia-Lopez desires to file his own Motion to Suppress regarding any Fourth Amendment violations regarding his own traffic stop, he must do so within fourteen days of the issuance of this order.

### B. Medina-Valdez and Astorga-Quiroa

As a preliminary matter, Astorga-Quiroa (the passenger in the silver Corolla) has standing to challenge the stop in this case. "[A]lthough a defendant may lack requisite possessory or ownership interest in a vehicle to directly challenge a search of that vehicle, the defendant may nonetheless contest the unlawfulness of his own detention and seek to suppress evidence found in the vehicle as the fruit of the [defendant's] illegal detention." *United States v. Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000); *see also United States v. Twilley*, 222 F.3d 1092, 1095 (9th Cir. 2000) (holding that a passenger of a vehicle

has "standing to seek suppression of evidence discovered in a vehicle as the fruit of an unlawful stop") (internal quotations omitted). Further, when the driver of a vehicle is stopped, the passenger as well as the driver is seized "and so may challenge the constitutionality of the stop." *Brendlin*, 551 U.S. at 251. Accordingly, as a passenger, Astorga-Quiroa has standing to challenge the traffic stop, and the Fourth Amendment analysis that applies to Medina-Valdez also applies to Astorga-Quiroa.[10]

Here, looking at the totality of the circumstances, the officers had reasonable suspicion to pull over Medina-Valdez and Astorga-Quiroa. The officers knew, based on the planned sale and the prior sale, that Munguia-Lopez was a drug dealer. The police also were aware that the drugs were likely separated from Munguia-Lopez because Munguia-Lopez had said that someone else had them in their car and he needed to get them before the purchase. Although Munguia-Lopez had told the UC this information at 9:41 a.m., and there were 65–85 minutes where Munguia-Lopez was unobserved, there is no indication that the police had been told Munguia-Lopez had retrieved the drugs and had them in his sole possession between then and the time of his arrest. It was equally as likely that Munguia-Lopez had *not* picked up the drugs as it was that he *had* retrieved them.

The silver Corolla followed, or "mirrored," the black Audi for a considerable length of time—approximately thirty minutes. Dkt. 46-3, at 3. As follow cars are a common tactic used by drug dealers to hide their illicit merchandise from law enforcement, it was entirely

---

[10] To be clear, whether Astorga-Quiroa has standing to challenge the *search* is a separate analysis. However, because the Motion to Suppress challenges only the *stop*, the Fourth Amendment applies the same to both the driver (Medina-Valdez) and the passenger (Astorga-Quiroa).

reasonable for the officers to conclude that the silver Corolla was a follow car and possessed the drugs. Indeed, although follow cars are not used as often in Idaho as in California, Detective Tuttle has personally been involved in four operations involving follow cars and has received training on the subject. Furthermore, the Ninth Circuit has already held that, subject to the restrictions of the Fourth Amendment and based on the totality of the circumstances, it can be reasonable to stop individuals in a follow car. *United States v. Zavala-Huerta*, 2021 WL 4461613, at *1 (9th Cir. 2021). Although the highways between Driggs and Swan Valley are in a more remote part of the state, there were still various opportunities that a car could have turned, such as turning north from Driggs to Idaho Falls, staying on Highway 33 towards Alpine or Jackson Hole, Wyoming, various intersections in Driggs and Victor, and private turnoffs scattered throughout the highways. Thus, even though the Corolla trailing the Audi for half an hour (over twenty-five miles) in rural Idaho is not as suspicious as a Corolla following an Audi in busy New York City for half an hour, it nevertheless is still suspicious, especially when taken in conjunction with the other indicators that the Corolla was a follow car. The Corolla did not follow the Audi just from Driggs to the stop point. It followed the Audi from the very street in Driggs at which the Audi started.

Furthermore, the Corolla had California license plates. This is significant for two reasons. First, Detective Tuttle testified that follow cars are more common in California than Idaho, boosting credence to his conclusion that the Corolla was a follow car. A driver of a car with California plates is more likely to use California tactics in completing a drug deal. Second, California is a source state for methamphetamine, i.e., methamphetamine in

Idaho is often shipped from Mexico through California.

The Corolla had windows tinted so heavily that Corporal Shively thought that it was a possible tint violation. Notably, the Corolla was *not* stopped for this possible violation, and thus the Government cannot contend that this was a pretextual stop. However, because tinted windows obscure an officer's ability to see the contents of a car from the outside, the tint *can* be used as a part of the "reasonable suspicion" analysis.

Detective Tuttle was permitted by the collective knowledge doctrine to ask other ISP troopers to perform the actual stop of the silver Corolla. *See United States v. Ramirez*, 473 F.3d 1026, 1037 (9th Cir. 2007). Based on the entirety of the situation—the length of time that the Corolla followed the Audi, the multiple opportunities that the Corolla had to turn off the road, the tinted windows, the California license plates, the tight distance between the Corolla and the Audi when they started their journey, the fact that the officers knew that Munguia-Lopez was a drug dealer based on his previous sale, the planned drug transaction, and the conversation between Munguia-Lopez and the UC in the morning that indicated Munguia-Lopez did not personally have the drugs but that they were in a different car—the police had reasonable suspicion to conclude the Corolla was a follow car and stop it. Accordingly, the traffic stop of the silver Corolla did not violate the Fourth Amendment. As such, the Motion to Suppress is DENIED.

## V. ORDER

The Court HEREBY ORDERS:

1.  Defendants' Motion to Suppress (Dkt. 39) is DENIED.

MEMORANDUM DECISION AND ORDER - 12

2.  If he desires, Munguia-Lopez shall file his Motion to Suppress within 14 days

of the date of this order.

DATED: May 18, 2022

David C. Nye
Chief U.S. District Court Judge